IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01718-PAB-KLM

DTC ENERGY GROUP, INC., a Colorado corporation,

        Plaintiff,

v.

ADAM HIRSCHFELD, an individual,
JOSEPH GALBAN, an individual, and
ALLY CONSULTING, LLC, a Wyoming limited liability company formerly known as Wyodak
Staffing, LLC,

        Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on Plaintiff's **Motion for Leave to File Second
Amended Complaint** [#72][1] (the "Motion").  Defendants filed a Response [#75] in
opposition to the Motion, and Plaintiff filed a Reply [#76].  The Motion is thus fully briefed
and ripe for resolution.  For the reasons set forth below, the Motion [#72] is **GRANTED**.

**I. Background**

        Plaintiff filed suit on July 14, 2017, alleging that Defendants Adam Hirschfeld
("Hirschfeld") and Joseph Galban ("Galban") misappropriated confidential information and
trade secrets to benefit Plaintiff's competitor, Defendant Ally Consulting, LLC ("Ally").  In
the present Motion [#72], Plaintiff moves for leave to file its Second Amended Complaint

_____

        [1] "[#72] is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF).  This convention is used throughout this Order.

[#72-1], which seeks to add: (1) Craig Hirschfeld, Joseph Johnson, Katie Stromstad, Ross Rhinehart, and Ally Energy Services, Inc. as new Defendants; (2) new claims consisting of conversion and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; and (3) new factual allegations. The three current Defendants oppose the Motion [#72], arguing that Plaintiff's amendments are made in bad faith, are unduly delayed, and are futile. *See Response* [#75]. The Court has not yet entered a scheduling order, nor has it set a deadline to join parties and amend pleadings, and therefore, Plaintiff's motion is timely. *See Minute Order* [#74]. Thus, the Court considers any arguments raised by the parties related to whether justice would be served by amendment. *See* Fed. R. Civ. P. 15(a)(2).

## II. Legal Standard

The Court has discretion to grant a party leave to amend its pleadings. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). The purpose of the rule is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citation omitted). "[Defendants] bear the burden of showing that the proposed amendment is sought in bad faith [or is] futile." *Corp. Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F. Supp. 2d 1056, 1061 (D. Colo. 2009) (citing *Fluker v. Fed.*

*Bureau of Prisons*, No. 07-cv-02426-CMA-CBS, 2009 WL 1065986, at *4 (D. Colo. Apr. 21, 2009)).

### III.  Analysis

**A.  Futility**

An amendment is futile only if it would not survive a motion to dismiss.  *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (citing *Jefferson Cty. Sch. Dist. v. Moody's Inv'rs Servs.*, 175 F.3d 848, 859 (10th Cir. 1999)).  "In ascertaining whether plaintiff['s] proposed amended complaint is likely to survive a motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff[ ], and the allegations in the complaint must be accepted as true."  *Bennett v. Wells Fargo Home Mortg.*, No. 16-cv-03185-CMA-KLM, 2017 WL 4675524, at *1 (D. Colo. Oct. 18, 2017) (citing *Murray v. Sevier*, 156 F.R.D. 235, 238 (D. Kan. 1994)).  Moreover, "[a]ny ambiguities must be resolved in favor of plaintiff[ ], giving [plaintiff] 'the benefit of every reasonable inference' drawn from the 'well-pleaded' facts and allegations in [the] complaint."  *Id.*  Defendants challenge the proposed additions of RICO and CFAA claims, arguing that they are futile, but make no such argument regarding the proposed conversion claim.  *See Response* [#75].

**1.  RICO Claim**

As noted above, Plaintiff seeks leave to add a new statutory claim against Defendants under RICO.  *See Second Am. Compl.* [#72-1].  Plaintiff alleges that Defendants engaged in a coordinated scheme to form Defendant Ally and transform it into a direct competitor of Plaintiff's.  *Reply* [#76] at 6.  Plaintiff alleges that Defendants

"hijacked" its resources, confidential information, and employees, all while still employed by Plaintiff. *Id.* Further, Plaintiff alleges that Defendants utilized Plaintiff's resources and information in order to carry out their alleged fraudulent scheme. *Id.*

Defendants argue that the alleged RICO claim in the Second Amended Complaint is legally and factually insufficient to survive a motion to dismiss. *Response* [#75] at 10. Specifically, Defendants state that (1) Plaintiff does not have any trade secrets; (2) Plaintiff has provided little or no information as to why the alleged predicate acts would survive an inquiry into a valid RICO claim; and (3) Plaintiff's claim is subject to dismissal because there is no requisite enterprise. *Id.* at 10-13. Essentially, Defendants argue that Defendant Ally and its employees were operating within the permissible bounds of regularly conducted business practices.

To state a claim under RICO, Plaintiff must plead "sufficient facts to make plausible (1) conduct; (2) of an enterprise; (3) through a pattern[;] (4) of racketeering activity." *Christou v. Beatport, LLC*, 849 F. Supp. 2d. 1055, 1077 (D. Colo. 2012) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Racketeering activity is defined "to mean any of numerous acts 'chargeable' or 'indictable' under enumerated state and federal laws, including . . . federal mail and wire fraud statutes." *Christou*, 849 F. Supp. 2d. at 1077-78; *see also* 18 U.S.C. §§ 1341 and 1343. Plaintiff must also meet the requirements of Fed. R. Civ. P. 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See Pine Tel. Co., Inc. v. Alcatel Lucent USA Inc.*, 617 F. App'x 846, 860 (10th Cir. 2015) (citation omitted). The Second Amended Complaint must "set forth the time, place and contents of the false representations, the identity of the party making the false statements, and the

consequences thereof." *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991).

First, Defendants argue that the RICO claim is subject to dismissal because Plaintiff does not have any actual trade secrets. *Response* [#75] at 11. Defendants, however, do not cite to any case law supporting this proposition. Additionally, Plaintiff argues that its trade secret claims have nothing to do with its independent RICO claim. *Reply* [#76] at 4. To support a RICO claim, Plaintiff is merely required to plead sufficient facts to make plausible conduct of an enterprise through a pattern of racketeering activity. *Christou*, 849 F. Supp. 2d. at 1077. Defendants fail to explain how these elements necessarily require allegations regarding or proof of the existence of trade secrets. Therefore, the Court agrees with Plaintiff that the existence (or lack thereof) of trade secrets is immaterial to its RICO claim.

Second, regarding Defendants' argument that Plaintiff has not met the requirements of Rule 9(b) with regard to predicate acts, the Court finds Plaintiff, has, in fact, adequately alleged specific circumstances of plausible wire fraud. *Response* [#75] at 12. As mentioned above, racketeering activity is defined "to mean any of numerous acts 'chargeable' or 'indictable' under enumerated state and federal laws, including . . . federal mail and wire fraud statutes." *Christou*, 849 F. Supp. 2d. at 1077-78; *see also* 18 U.S.C. §§ 1341 and 1343. To satisfy Fed. R. Civ. P. 9(b), a "plaintiff must identify with specificity the circumstances constituting the fraud in the predicate acts." *Id.* (citing *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1477 (D. Colo. 1995)). To state a claim for wire fraud, Plaintiff must plead facts that allege Defendants:

[D]evised or [intended] to devise any scheme or artifice to defraud, or for

obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmit[ted] or cause[d] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such a scheme or artifice.

18 U.S.C. § 1343. In the Second Amended Complaint, Plaintiff makes several plausible allegations regarding such activity. For example, Plaintiff alleges that on January 16, 2017, Defendant Hirschfeld secured, through interstate email messages, a customer contract executed with Defendant Ally, despite Defendant Hirschfeld's alleged representation that the customer was executing a contract with Plaintiff. *See Second Am. Compl.* [#72-1] ¶¶ 140-148. Specifically, Plaintiff alleges that "on January 13, 2017, [Defendant Hirschfeld], using [Plaintiff's] email address and holding himself out [as an employee of Plaintiff]" solicited a customer contract from Chisholm Energy. *Id.* ¶ 140. Later, Plaintiff states that Chisholm's superintendent "was confused" because he believed, based on "[Defendant] Hirschfeld's misrepresentations on January 13, 2017, that Chisholm had already executed a customer contract with [Plaintiff] on January 16, 2017" when it had not. *Id.* ¶ 147. Furthermore, Plaintiff states that Defendants "testified that [Defendant Hirschfeld] and [Defendant Ally] intend to continue to solicit [Plaintiff's] customers" and allege "as a direct and proximate result . . . [Plaintiff] has lost, and continues to lose . . . current and future business." *Id.* ¶¶ 236, 238. Therefore, the Court finds that Plaintiff has, with requisite specificity, plausibly alleged a claim of wire fraud under RICO that satisfies Fed. R. Civ. P. 9(b).

Third, Defendants argue that Plaintiff's RICO claim is subject to dismissal because there is no requisite enterprise, stating that Defendant Ally is not an organization for RICO purposes, but rather, is a separate corporate entity that has existed "as long as [Plaintiff]."

*Response* [#75] at 13. Further, Defendants state: "The organization, if one exists at all, is a group of employees, who, toward the end of their employment with [Plaintiff], became dissatisfied with the hostile work environment and resigned to work for [Defendant Ally]." *Id.*

The Court is unpersuaded by Defendants' argument that Defendant Ally is not an enterprise for purposes of RICO claims. 18 U.S.C. § 1961(4) defines an enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Defendant Ally employs the Defendants who engaged in the alleged fraudulent affairs, and, Plaintiff plausibly argues, conducted the alleged fraud to benefit Defendant Ally. *Second Am. Compl.* [#72-1] ¶¶ 330-333. Even if the Court were to agree with Defendants that Defendant Ally is merely "a group of employees," *Response* [#75] at 13, the statute provides that any *individual* or *partnership* satisfies the requisite meaning of an enterprise. 18 U.S.C. § 1961(4). Because Defendant Ally employs the individuals that Plaintiff alleges conspired against Plaintiff, the Court finds that Plaintiff has sufficiently alleged existence of an "enterprise" for purposes of the RICO statute.

For the foregoing reasons, the Court finds that Plaintiff's RICO claim has been adequately pled and is not futile.

## 2.    CFAA Claims

Plaintiff additionally seeks leave to assert new statutory CFAA claims in the Second Amended Complaint. *See Second Am. Compl.* [#72-1]. Specifically, Plaintiff asserts two claims under the CFAA, both seeking civil remedies for alleged violations of 18 U.S.C. § 1030(g), which states: "A civil action for a violation of this section may be brought only if the

conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(I)." Seemingly, Plaintiff here invokes subclause (I), which allows for injunctive relief if the offense causes "loss to 1 or more persons during any 1-year period aggregating at least $5,000 in value." Plaintiff's proposed Amended Complaint states: "[a]s a direct and proximate result of [Defendant Hirschfeld's] unauthorized access of [Plaintiff's] computer . . . [Plaintiff] has incurred significant costs of more than $5,000.00 in responding to [Defendant Hirschfeld's] unauthorized access." *Second Am. Compl.* [#72-1] ¶¶ 344, 348. Plaintiff argues that Defendant Hirschfeld "continued to use and access a . . . computer . . . *after he resigned*, without [Plaintiff's] knowledge or authorization, causing [Plaintiff] damages." *Motion* [#72] at 11 (emphasis in original). In support of its argument, Plaintiff cites *Cloudpath Networks, Inc. v. SecureW2 B.V.*, 157 F. Supp. 3d 961, 984-85 (D. Colo. 2016), for the proposition that an employee's authorization to access an employer's computer ends upon resignation, and that allegations regarding post-resignation access to an employer's computer is sufficient to support bringing a CFAA claim. *Motion* [#72] at 11.

Defendants argue that only conclusory allegations are offered to support that confidential and proprietary information was on the alleged stolen computer that Defendant Hirschfeld used after his employment with Plaintiff ended. *Response* [#75] at 13. Further, Defendants argue that the computer "was nothing more than a storage device" and that "no information copied onto the computer was deleted from [Plaintiff's] records." *Id.* Finally, Defendants state "[Defendant Hirschfeld] obtained the information lawfully, on a computer provided by [Plaintiff] and accessed the information for a limited purpose" and hence, the CFAA claims are futile. *Id.* at 15. In support of their argument, Defendants cite *United*

*States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012), for the proposition that CFAA claims may be brought only for "unauthorized procurement or alteration of information, not its misuse or misappropriation." *Response* [#75] at 14.

Here, Plaintiff alleges that Defendant Hirschfeld stole his old work computer and used confidential files in connection with business development activities for Defendant Ally. *Second Am. Compl.* [#72-1] ¶¶ 220-221, 347. Plaintiff also states that such access was unauthorized. *Id.* ¶¶ 338-340. The Court repeats that these allegations must be construed to give the benefit of every reasonable inference to Plaintiff. *Bennett*, 2017 WL 4675524, at *1. Nevertheless, out of an abundance of caution, the Court considers whether the allegations regarding Defendant Hirschfeld's use of the information adequately assert that he exceeded "authorized access" as defined by the statute. *See* 18 U.S.C. § 1030.

Defendants correctly note the differing interpretations that have developed regarding the meaning of "exceeds authorized access" requirement of the CFAA. *Response* [#75] at 14 (citing 18 U.S.C. § 1030). *Nosal* interpreted the term to mean, as Defendants state, that the "CFAA 'target[s] the unauthorized procurement or alteration of information, not its misuse or misappropriation.'" 676 F.3d at 863 (internal quotation marks omitted). Specifically, *Nosal* held that "'exceeds authorized access' in the CFAA is limited to violations of restrictions on *access* to information, and not restrictions on its use." *Id.* at 863-864 (emphasis in original).

*Cloudpath* adopted the conclusion offered in *Nosal*, stating: "'exceeds authorized access' in the CFAA . . . applies only to individuals who are allowed to access a company computer and use that access to obtain data they are not allowed to see for any purpose."

*Cloudpath*, 157 F. Supp. 3d at 983.  However, the *Cloudpath* court went on to hold that

> [T]he CFAA does not care about [a Defendant's] 'purposes,' but it certainly cares about his 'employment.' His employment is the basic reason why Cloudpath gave him permission to access company data at all. The Court therefore finds that Cloudpath has sufficiently alleged a CFAA violation against [the defendant] to the extent he accessed Cloudpath data after his resignation.

*Id.* at 984.

Here, because Plaintiff alleges that Defendant Hirschfeld "stole" his work computer, *see Second Am. Compl.* [#72-1] ¶ 220, and viewing as true the allegation that such use was unauthorized and occurred after his employment with Plaintiff, *id.* ¶¶ 221-222, the Court finds that the allegations as pled meet both the *Cloudpath* and *Nosal* standards. Furthermore, the Second Amended Complaint also alleges that Defendant Hirschfeld accessed Plaintiff's files and other confidential information in September 2017. *Id.* ¶¶ 224-225.  For these reasons, the Court finds that *Cloudpath* is satisfied because Defendant Hirschfeld allegedly accessed Plaintiff's data after his employment with Plaintiff ended. 157 F. Supp. 3d at 984.  Further, *Nosal* is satisfied because Defendant Hirschfeld allegedly violated the scope of access allowed by Plaintiff.  676 F.3d at 863-864.  Taking the allegations in the Second Amended Complaint as true, Defendant Hirschfeld exceeded his authorized access to Plaintiff's information, and therefore, the CFAA claims as alleged are not futile.

## B.    Undue Delay

Under Fed. R. Civ. P. 15(a), a Court shall grant leave to amend "when justice so requires."  It is well-settled that untimeliness alone is a sufficient reason to deny leave to amend when the party filing the motion has no adequate explanation for the delay.

*Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991). The Court may deny a motion to amend based solely on undue delay. *Minter*, 451 F.3d at 1205. Delay is "undue" only if it will place an unwarranted burden on the Court or become prejudicial to the opposing party. *Id.* The Tenth Circuit "focuses primarily on the reason for the delay." *Id.* A motion to amend is untimely, if, among other reasons, the moving party has made the complaint a "moving target," is trying to "salvage a lost cause by untimely suggesting new theories of recovery," is trying to present more theories to avoid dismissal, or is knowingly waiting until the eve of trial to assert new claims. *Id.* at 1206 (citations omitted). Other common reasons for finding undue delay include lack of adequate explanation for the delay or when a moving party knows or should have known of the facts in the proposed amendment but did not include them in the original complaint or any prior attempts to amend. *Id.* (citations omitted).

Here, Defendants oppose Plaintiff's proposed amendments to add Craig Hirschfeld, Joseph Johnson, Katie Stromstad, Ross Rhinehart, and Ally Energy Services, Inc. as additional Defendants to this matter. *See Response* [#75]. Defendants state that "[i]t is undisputed that all of the proposed new defendants were fully known to Plaintiff at the time it filed this lawsuit." *Id.* at 7. However, Plaintiff argues that "it was not until after the parties conducted limited discovery and [Plaintiff] obtained more details from witnesses at the [January 30, 2018 preliminary injunction] hearing that [Plaintiff] learned that the same core conspiracy involved more people." *Motion* [#72] at 8. Further, Plaintiff states that in this case "[n]o scheduling order has been entered, full discovery has not started, no amendment deadline or trial date has been set" and therefore, Plaintiff has not unduly delayed. *Id.* at 8-9.

Because this case is still in the early stages of proceedings, and because Plaintiff has provided adequate explanation for not including the new Defendants in the prior complaints, the Court finds that Plaintiff did not unduly delay in seeking leave to file the Second Amended Complaint. *See Park v. TD Ameritrade Tr. Co., Inc.*, No. 10-cv-02599-PAB-KMT, 2011 WL 1770838, at *1 (D. Colo. May 10, 2011) (granting leave to amend where no scheduling order had been entered).

## C.    Bad Faith

Defendants bear the burden of showing that the proposed amendment is sought in bad faith. *AE Biofuels*, 663 F. Supp. 2d 1056 at 1061. Bad faith with regard to a Rule 15 motion can be inferred if the proposed amendment directly contradicts allegations made in the original pleading, such that the original and amended factual accounts cannot be reconciled. *Colo. Civil Rights Comm'n v. 1950 Logan Condo.'s Condo. Ass'n*, No. 13-cv-02583-PAB-MJW, 2013 WL 6858703, at *1 (D. Colo. Dec. 30, 2013) (citations omitted). Bad faith may also be inferred if a party seeks leave to amend for an improper purpose. *Id.* (citing *Ayon v. Gourley*, No. 98-1305, 185 F.3d 873, 1999 WL 516088, at *3 (10th Cir. June 25, 1999)).

Defendants argue that "[Plaintiff's] request to file a [Second Amended Complaint] is intended to annoy the defendants and unduly compound and increase the cost of this litigation." *Id.* at 8. Defendants cite *Williams v. Savage*, 569 F. Supp. 2d 99, 108 (D.D.C. 2008), to buttress their argument that because Plaintiff could have included these allegations earlier, they have here demonstrated a dilatory motive or bad faith. *Response* [#75] at 8. The plaintiffs in *Williams* were denied leave to amend their complaint to add two paragraphs with additional facts because the amendment only served "to support new

arguments that the plaintiffs could have raised, but failed to, in their opposition to [a] motion to dismiss." 569 F. Supp. 2d at 107-108.

*Williams* is easily distinguishable from this case. Here, no motions to dismiss have been filed, nor has Plaintiff apparently failed to raise an argument at some point in the proceedings. Plaintiff merely seeks to add new allegations and facts based on information discovered in the limited discovery period preceding the January 30, 2018 preliminary injunction hearing, in addition to information learned during the hearing. Generally, in comparison to this matter, the Court has allowed amendment when a party first learns information through discovery, even if the deadline for amendment of pleadings has passed. *See, e.g.*, *Sullivan v. Equifax Info. Servs. LLC*, No. 14-cv-02377-CMA-KLM, 2015 WL 4480899, at *3-4 (D. Colo. July 23, 2015); *see also Riggs v. Johnson*, No. 09-cv-01226-WYD-KLM, 2010 WL 1957110, at *3 (D. Colo. Apr. 27, 2010). Because this case is still in its early stages, with no deadlines for discovery or amendment of pleadings set, the Court does not find Plaintiff has acted in bad faith or with a dilatory motive.

For the foregoing reasons, the Court finds that justice would be served by allowing Plaintiff's proposed amendments.

## IV. Conclusion

Accordingly,

IT IS HEREBY **ORDERED** that the Motion [#72] is **GRANTED**.

IT IS FURTHER **ORDERED** that the Clerk of the Court shall accept Plaintiff's proposed Second Amended Complaint [#72-1] for filing as of the date of this Order.

IT IS FURTHER **ORDERED** that the newly-named Defendants shall be served in

accordance with the Federal Rules of Civil Procedure.

IT IS FURTHER **ORDERED** that the Scheduling Conference is **RESET** to **December 13, 2018**, at **10:30 a.m.** in Courtroom A-401, Fourth Floor, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.

IT IS FURTHER **ORDERED** that a proposed Scheduling Order shall be filed **no later than December 6, 2018**.


Dated:  November 6, 2018          BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge