IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-01718-PAB-KLM

DTC ENERGY GROUP, INC., a Colorado Corporation,

      Plaintiff,

v.

ADAM HIRSCHFELD,
JOSEPH GALBAN,
CRAIG HIRSCHFELD,
JOSEPH JOHNSON,
KATIE STROMSTAD,
ROSS RHINEHART,
ALLY CONSULTING, LLC f/k/a Wyodak Staffing, LLC, a Wyoming limited liability
company, and
ALLY ENERGY SERVICES, INC., a Wyoming corporation,

      Defendants.

---

**ORDER**

---

      This matter is before the Court on defendant Ally Energy Services, Inc. Motion to

Dismiss and Opening Brief [Docket No. 103]; defendants Craig Hirschfeld and Joseph

Johnson's Motion to Dismiss Second Amended Complaint [Docket No. 113]; defendant

Katie Stromstad's Motion to Dismiss Second Amended Complaint [Docket No. 114];

and defendant Ross Rhinehart's Motion to Dismiss Second Amended Complaint

[Docket No. 115].  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## I.  BACKGROUND

### A.  Factual Background

      Plaintiff DTC Energy Group, Inc. ("DTC") is a consulting and staffing firm serving

the oil and gas industry.  Docket No. 82 at 4, ¶ 8.[1]  DTC's business involves placing

candidates with companies in the oil and gas industry.  *Id*. at 7, ¶ 20.  In connection with

that business, DTC has confidential information, some of which it contends are "trade

secrets."  These trade secrets include: (1) "Candidate Folders," in which DTC stores

resumes, including resumes which it has "re-formatted" to include the DTC logo and

contact information, *id*. at 12-13, ¶¶ 42-48; (2) a "Candidate Database" that summarized

the contents of "more than 1,000 of DTC's re-formatted resumes," *id*. at 13, ¶¶ 48-49;

and (3) a "Profit Calculator" that DTC uses "to evaluate several financial variables and

gain competitive advantages in the industry."  *Id*. at 13-14, ¶ 50.

In May 2013, DTC hired defendant Adam Hirschfeld as a salesman.  *Id*. at 8,

¶ 27.  In January 2014, DTC promoted Adam Hirschfeld to be its business development

lead.  *Id*. at 9, ¶ 29.  As business development lead, Adam Hirschfeld had access to

DTC's confidential information.  *Id*. ¶ 33.  In July 2014, DTC hired defendant Katie

Stromstad as a human resources specialist.  *Id*. at 5, ¶ 13.  In November 2014, DTC

hired defendant Joseph Galban ("Galban") as a staff accountant.  *Id*. at 4, ¶ 10.  From

approximately July 2015 to June 2016, DTC subleased office space to defendant Ross

Rhinehart ("Rhinehart").  *Id*. at 5, ¶ 14.

In the summer of 2015, DTC began discussing a potential business relationship

---

[1] These facts are drawn from Plaintiff's Second Amended Verified Complaint and
Jury Demand [Docket No. 82].  The Court discusses only those allegations relevant to
resolution of the instant motions.  Further background can be found in the Court's order
on DTC's motion for a preliminary injunction.  Docket No. 57.  For the purposes of this
order, the Court accepts "well-pleaded factual allegations" in the complaint as true.
*Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

with defendant Ally Consulting, LLC ("Ally Consulting"). *Id*. at 15, ¶ 57.[2] Ally Consulting

provides similar staffing services in the oil and gas industry. *Id*. at 16, ¶ 59. DTC

agreed that it would assist Ally Consulting by "taking on its few employees and/or

contractors and by handling the associated administrative services . . . in exchange for

percentage-based payments from [Ally Consulting]." *Id*. at 15, ¶ 58. DTC and Ally

Consulting executed an agreement on January 11, 2016; Ally Consulting terminated the

agreement on July 11, 2016. *Id*. at 16, ¶¶ 60-61.

DTC alleges that, beginning in November 2015, Adam Hirschfeld, defendant

Craig Hirschfeld ("Hirschfeld"), and defendant Joseph Johnson ("Johnson") began

"plotting" to build up Ally Consulting by "stealing DTC's business." *Id*. at 16, ¶ 64. The

complaint is unclear what, if any, management role or ownership interest Hirschfeld and

Johnson had at the time or at present in Ally Consulting. *Compare id*. at 6, ¶ 16

(alleging that, since April 2017, the sole member of Ally Consulting is defendant Ally

Energy Services, Inc. ("AES")) *with id*. at 4-5, ¶¶ 11-12, 14 (alleging that Rhinehart,

Hirschfeld, and Johnson are currently "co-owner[s] and co-member[s] of [Ally

Consulting] and/or [AES]"). DTC alleges that Adam Hirschfeld, Hirschfeld, and Johnson

agreed that Adam Hirschfeld would work for Ally Consulting while still employed by

DTC, and that Adam Hirschfeld would convince Galban and Stromstad to assist him.

*Id*. at 17, ¶ 66-67. DTC alleges that Adam Hirschfeld would secure customers on Ally

Consulting's behalf from customers who believed they were dealing with DTC, and that

Adam Hirschfeld, Galban, Stromstad, and Rhinehart would email the customers

---

[2] At the time, Ally Consulting was known as Wyodak Staffing, LLC.

"onboarding paperwork on Ally letterhead that they had copied from DTC forms." *Id*. at 18, ¶¶ 73-74. Stromstad sometimes mistakenly sent candidates DTC onboarding paperwork instead of Ally onboarding paperwork. *Id*. at 19, ¶ 82. Adam Hirschfeld, Galban, Stromstad, and Rhinehart worked to conceal the work they were doing for Ally Consulting from DTC's owners. *Id*. at 20-21, ¶¶ 90-97.

DTC alleges that Hirschfeld and Craig Hirschfeld engaged in a "fraudulent" scheme through CS Property Holdings, a third-party LLC. *Id*. at 30-31, ¶¶ 168-177. Under the alleged scheme, CS Property Holdings would charge DTC "consultants" (placed customers) in Ohio and West Virginia for their housing. *Id*. The rent paid to CS Property Holdings by the consultants "far exceeded" the actual rent charged by landlords to CS Property Holdings. *Id*. at 31, ¶ 176. DTC would then reimburse the consultants for their housing. *Id*., ¶ 175.

On November 8, 2016, Adam Hirschfeld emailed Rhinehart DTC's Profit Calculator. *Id*. at 34, ¶ 197. On February 13, 2017, Stromstad resigned from DTC. *Id*. at 5, ¶ 13. On May 3, 2017, Adam Hirschfeld resigned from DTC, effective May 31. *Id*. at 32, ¶ 187. In late May 2017, Adam Hirschfeld asked Rhinehart to obtain "confidential DTC financial information" from Galban. *Id*. at 34, ¶ 195. DTC alleges that Rhinehart did obtain "confidential financial documents and trade secrets" from Galban. *Id*. ¶ 198. Adam Hirschfeld, Stromstad, and Galban now all work for Ally Consulting. *Id*. at 35, ¶ 203. Before leaving DTC, Adam Hirschfeld stole his work laptop and flash drives that had "thousands of confidential DTC files he downloaded to them." *Id*. at 37, ¶ 220. After DTC commenced this lawsuit, Rhinehart requested that Adam Hirschfeld cease all

use of the laptop.  *Id.* ¶ 223.

## B.   Procedural History

DTC initiated this lawsuit on July 14, 2017.  Docket No. 1.  On the same day,
DTC moved for a temporary restraining order and preliminary injunction based on the
alleged misappropriation of its trade secrets by Adam Hirschfeld, Galban, and Ally
Consulting.  Docket No. 4.  After a hearing on the motion on July 20, 2017, the Court
denied DTC's request for a temporary restraining order, finding that DTC had failed to
demonstrate a likelihood of success on the merits of its misappropriation claims.  *See*
Docket No. 17 at 69.  On September 13, 2017, DTC filed an amended complaint and
an amended motion for a preliminary injunction.  Docket Nos. 24, 25.  The amended
motion sought relief against Adam Hirschfeld, Galban, and Ally Consulting for
misappropriation of trade secrets under federal and state law, breach of contract, and
breach of the duty of loyalty and unfair competition.  Docket No. 25 at 2, 6-16.  After an
evidentiary hearing on January 30, 2018, the Court denied DTC's request for a
preliminary injunction on March 2, 2018.  Docket No. 57.  The Court concluded that
DTC had failed to demonstrate irreparable harm on all of its claims save for the breach
of contract claim and further concluded that DTC had failed to demonstrate a likelihood
of success on the merits of the breach of contract claim.  *Id*.  The Tenth Circuit affirmed
the Court's denial of a preliminary injunction.  *See DTC Energy Group, Inc. v.
Hirschfeld*, 912 F.3d 1263 (10th Cir. 2018).

On November 9, 2018, DTC filed its Second Amended Complaint (the
"complaint").  Docket No. 82.  The complaint adds as defendants Hirschfeld, Johnson,

Stromstad, Rhinehart (together, the "individual defendants"), and AES. The complaint brings claims against some or all defendants for (1) breach of contract; (2) breach of the duty of loyalty; (3 and 4) misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*, and the Colorado Uniform Trade Secrets Act ("CUTSA"), Colo. Rev. Stat § 7-74-101 *et seq.*; (5) unjust enrichment; (6) tortious interference with business relations; (7) tortious interference with contract; (8) unfair competition; (9) civil theft; (10) conversion; (11) civil conspiracy; (12) violation of the Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.*; (13) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*; and (14) conspiracy to violate the CFAA. *Id.* at 40-57, ¶¶ 241-349.

AES and the individual defendants have filed motions to dismiss. Docket Nos. 103, 113, 114, 115.[3]

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal

---

[3] Defendant Adam Hirschfeld's Motion for Judgment on the Pleadings [Docket No. 134] is not before the Court in this Order.

quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A

plaintiff must nudge [his] claims across the line from conceivable to plausible in order to

survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's

allegations are "so general that they encompass a wide swath of conduct, much of it

innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191

(quotations omitted).  Thus, even though modern rules of pleading are somewhat

forgiving, "a complaint still must contain either direct or inferential allegations respecting

all the material elements necessary to sustain a recovery under some viable legal

theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks

omitted ).

## III.  ANALYSIS

### A.    AES's Motion to Dismiss

In its motion to dismiss, AES argues that, because it is a "non-operating, holding

company owning 100% of the membership interest in [Ally Consulting]," DTC has "no

basis for independent claims against AES."  Docket No. 103 at 2.  In response, DTC

contends that it refers to AES and Ally Consulting collectively as "Ally" throughout the

complaint.  Docket No. 110 at 10-13.[4]  As a result, AES argues that the complaint is not

sufficient to put AES on notice of the claims against it.  Docket No. 111 at 6-8.

The complaint's allegations against AES are oblique.  The first page refers to

"Ally Consulting, LLC f/k/a Wyodak Staffing, LLC and Ally Energy Services, Inc.

---

[4] DTC argues that AES's motion fails to comply with this Court's Practice
Standards.  Docket No. 110 at 8-10.  This argument, which is effectively a motion to
strike, is not properly before the Court.  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall
not be included in a response or reply to the original motion.").

(collectively, 'Ally')."  Docket No. 82 at 1.  The complaint next identifies the parties,

describing "Ally Consulting, LLC" as

> a Wyoming limited liability company in good standing with its principal
> offices currently located in Casper, Wyoming and Lakewood, Colorado.
> Ally formerly had a business relationship with DTC and, as a result of the
> Defendants' unlawful acts alleged herein, is currently a direct competitor
> of DTC.  During calendar year 2016 and much of 2017, the majority of
> Ally's work was being performed by DTC employees out of DTC's physical
> office.  On information and belief, Ally did not officially open its Lakewood,
> Colorado office until early 2017, shortly before DTC's employees officially
> "moved" to work for Ally.  Ally is A. Hirschfeld's, Ms. Stromstad's, Mr.
> Galban's, and Mr. Rhinehart's current employer, does business in
> Colorado, and one of its principal places of business is located in
> Lakewood, Colorado.

*Id*. at 6, ¶ 15.[5]  The complaint next identifies AES as "a Wyoming corporation in good

standing with its principal offices located in Casper, Wyoming and has been the sole

member of [Ally Consulting] since April 2017."  *Id*. at 6, ¶ 16.  The complaint further

alleges that Hirschfeld, Johnson, and Rhinehart are "co-owner[s] and co-member[s] of []

Ally Consulting, LLC and/or Ally Energy Services, Inc."  *Id*. at 4-6, ¶¶ 11-12, 14.  Taken

together, these paragraphs describe the relationship between AES and Ally Consulting:

AES owns Ally Consulting as its sole member.  They also describe Ally Consulting's

business: a competitor of DTC in the oil and gas consulting and staffing field that

employs Adam Hirschfeld, Stromstad, Galban, and Rhinehart.  They do not, however,

allege that AES, the holding company, is a competitor to DTC or that it has any

employees.  Moreover, throughout the general factual allegations the complaint

appears to use "Ally" solely to refer to Ally Consulting, as opposed to Ally Consulting

---

[5] Confusingly, the complaint here uses "Ally" as a shorthand for Ally Consulting,
not Ally Consulting and AES together.

and AES, and never mentions AES specifically.  *See, e.g.*, *id*. at 14, ¶ 53 (referring to

the "illegitimate clone company, Ally"); *id*. at 15-16, ¶¶ 57-63 (describing the initial

business relationship between DTC and "Wyodak Staffing, LLC" (Ally)).[6]  Despite DTC's

use of the collective "Ally" to purportedly refer to Ally Consulting and AES, the complaint

does not plausibly allege the involvement of AES – Ally's corporate parent – in any of

DTC's causes of action.  Thus, there is no basis for the Court to infer that there is a

basis for legal claims against AES independent of its ownership of Ally Consulting.

   DTC argues that the allegation that Ally Consulting and AES "share common

ownership and the same or similar employees" is sufficient to establish the claims

against AES.  Docket No. 110 at 12.  This argument is not persuasive.  First, the

complaint does not allege that the entities have "the same or similar employees."  *See*

Docket No. 82 at 6, ¶¶ 15-16.  Second, a bare allegation that the entities have common

ownership does not lead to an inference that AES, as an entity, is responsible for all of

Ally Consulting's acts.  *Cf. McCallum Family LLC v. Winger*, 221 P.3d 69, 74 (Colo.

App. 2009) (discussing eight factors courts use to determine whether a corporate entity

is an alter ego of another).[7]  DTC also argues that the allegations against AES are

_____

[6] The sole exception is an allegation that Ally Consulting issued DTC employees
"'@allyenergyservices.com email accounts' to use in connection with Ally Consulting's
secret business development efforts."  Docket No. 82 at 17, ¶ 67.  The Court agrees
with AES that an internet domain name does not establish the authority of the email
author.

[7] The parties spend considerable energy arguing the question of whether DTC
has pled sufficient facts that would allow it to pierce Ally Consulting's (and AES's)
corporate veil.  *See* Docket No. 103 at 6-9; Docket No. 110 at 8-10.  The Court agrees
with DTC that piercing the corporate veil is an equitable remedy rather than an
independent claim for relief.  *See, e.g.*, *Peacock v. Thomas*, 516 U.S. 349, 354 (1996)
(observing that piercing the corporate veil is a means of imposing liability on an

sufficient because the complaint alleges that both Ally Consulting and AES "were each involved in the plot to enrich themselves." Docket No. 110 at 12. However, DTC fails to explain how, given the allegations in the complaint about the corporate structure of AES and Ally Consulting, the Court could infer that AES was involved in the "plot" solely on the basis of DTC's inconsistent collective reference.

DTC argues that the use of a collective reference in the complaint is permissible. However, as a general matter, "[w]ithout allegations sufficient to make clear the grounds on which the plaintiff is entitled to relief," it is "impossible for the [C]ourt to perform its function of determining . . . whether the asserted claim is clearly established." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (internal citation and quotation omitted). "The need for individualized allegations is especially important where . . . each of the defendants ha[s] different powers and duties." *Brown*, 662 F.3d at 1165. Here, the collective reference in the complaint to both Ally Consulting and AES does not make clear on what grounds DTC is entitled to relief from AES. The cases cited by DTC do not support a bright-line rule that the use of a collective reference is permissible. Rather, those cases found that the complaint contained allegations that made clear the grounds on which plaintiff was entitled to relief. *See Dawson v. Bd. of Cty. Comm'rs of Jefferson Cty.*, No. 16-cv-01281-MEH, 2017 WL 5188341, at *11 (D. Colo. Jan. 3, 2017) (collective action permissible in § 1983 action where plaintiff alleges

_____

underlying cause of action). DTC does not attempt to support its claims against AES on the basis of allegations that it is Ally Consulting's alter ego. *See* Docket No. 110 at 9 (arguing that DTC's claims do not "rely on or require that AES's or [Ally Consulting's] corporate veils be pierced"). However, in order to establish the *legal* claims against AES, DTC must plead facts that make out a claim against AES. For this motion, piercing Ally's corporate veil is irrelevant.

that a similar group of defendants "all failed to take one specific act"); *Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *5 (D. Colo. May 18, 2011) (collective reference permissible in § 1983 action where the allegations against a group of defendants "all relate to a single incident" where defendants "are alleged to have been present at that incident and to have acted in concert"); *Ferguson v. Bd. of Cty. Comm'rs of Sierra Cty*, 2013 WL 12334214, at *4 (D.N.M. April 2, 2013) (holding that, because the "key inquiry" is "whether each defendant knows why he or she was named in the complaint," collective action permissible in § 1983 action where the allegations against defendants using "and/or" were tailored to specific claims). By contrast, the complaint in this case does not make clear the grounds on which DTC is entitled to relief from AES.

Because the complaint does not assert any claims upon which relief can be granted against AES, the Court grants AES's motion to dismiss.[8]

### B.   Individual Defendants' Motion to Dismiss

The Court will address the motions to dismiss filed by the individual defendants on a claim-by-claim basis.

### 1.   Second Claim – Breach of the Duty of Loyalty

DTC alleges that Stromstad "breached her duty of loyalty by soliciting customers

---

[8] DTC argues, in the alternative, that it should be granted leave to amend to cure any pleading deficiencies. Docket No. 110 at 13. A motion for leave to amend the complaint may not be made in a response to a motion. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion."). Even if DTC's request were properly made, a motion for leave to amend must "give[] adequate notice of the basis for the proposed amendment," which DTC fails to do. *See Requena v. Roberts*, 893 F.3d 1195, 1208 (10th Cir. 2018) (internal alterations and quotations omitted).

for Ally while still employed by DTC." Docket No. 126 at 5. Stromstad argues that the complaint fails to state a claim for breach of the duty of loyalty. Docket No. 114 at 6-7.

Under Colorado law, an employee breaches her duty of loyalty if she solicits customers for a rival business or solicits other employees to terminate their employment. *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 497 (Colo. 1989). In applying *Jet Courier*, the Tenth Circuit has stated that "courts should focus on the following factors in determining whether an employee's actions rise to the level of a breach of loyalty: (1) the nature of the employment relationship; (2) the impact or potential impact of the employee's actions on the employer's operations; and (3) the extent of any benefits promised or inducements made . . . to obtain their services in the competing business." *In re Prof'l Home Health Care, Inc.*, 159 F. App'x. 32, 34 (10th Cir. 2005) (unpublished). Furthermore, the factors must be weighed, as no one factor is determinative. *Id.*[9]

Turning to the first factor, Stromstad argues that DTC alleges only that she, as a human resources employee, complied with directives made by Adam Hirschfeld. Docket No. 114 at 7. Because, Stromstad argues, she lacked "substantial discretion" in her role, DTC's claim for breach of the duty of loyalty cannot survive. Docket No. 131 at 2-3. The Court agrees that the first factor weighs strongly in Stromstad's favor. *Jet*

---

[9] DTC argues that the three-factor test only applies in situations where the employee solicits co-employees to terminate employment, and not where the employee solicits customers for a rival business before the end of employment. Docket No. 126 at 5. Courts in this district have applied the three-factor test in cases where the allegedly disloyal employee solicited clients, not just co-workers. *See, e.g.*, *Nutritional Biomimetics, LLC v. Emperical Labs Inc.*, No. 16-cv-01162-KMT, 2018 WL 2567872, at *4 (D. Colo. April 24, 2018). The Court is not persuaded to adopt DTC's narrow reading of *Jet Courier*.

*Courier* derived its analysis of an employer's claim for breach of the duty of loyalty from agency principles. *Jet Courier*, 771 P.2d at 491-493 (adopting test set out in the Restatement (Second) of Agency); *cf.* 19 Richard A. Lord, *Williston on Contracts* § 54.26 (noting that courts allowing claims for breach of the duty of loyalty "derive guidance from analogous principles of agency law" in "determining the scope and extent of the duty"). As noted in the *Jet Courier* concurrence, "not every employee is the employer's agent, and an employee may act as an agent with regard to certain job functions but not with regard to others." *Jet Courier*, 771 P.2d at 503 (Mullarkey, J., specially concurring). The Court finds Stromstad's job functions and level of independent authority to be central to the analysis. *See Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1023 (Colo. App. 1993) (noting that, under *Jet Courier*, "there may be circumstances under which the duty of loyalty does not apply to an employee"); *cf.* Restatement of Employment Law § 8.01(a) ("Employees in a position of trust and confidence with their employer owe a fiduciary duty of loyalty to the employer in matters related to their employment."). The complaint alleges that Stromstad was employed as a "human resources specialist." *See* Docket No. 82 at 5, ¶ 13. The complaint further alleges that she acted at the direction of Adam Hirschfeld, who was employed by DTC at the time. *See id*. at 19, ¶¶ 80-82, 86-87. The complaint does not allege that Stromstad actively solicited customers; it alleges that her job was to send customers "onboarding paperwork." *See id*. at 19, ¶ 82. The Court finds that these facts are insufficient to demonstrate that Stromstad, in her role as human resources specialist, was acting as DTC's agent.

The second factor weighs slightly in favor of DTC. DTC generally alleges that, "[a]s a direct and proximate result of all of the foregoing acts, DTC has lost . . . current and future business," as well as "goodwill." *See id*. at 39-40, ¶ 238. Although the complaint fails to explain how Stromstad's actions, in particular, led DTC to lose business, the Court can reasonably infer that sending Ally Consulting onboarding paperwork to customers who would otherwise have joined DTC would cause DTC to lose business. The third factor weighs in favor of Stromstad, as the complaint is devoid of any allegations that Stromstad promised benefits or inducements to any customers or employees in order to get them to join Ally Consulting. Indeed, the only allegations regarding Stromstad's interaction with customers is that she sent customers – who had been recruited by Adam Hirschfeld – "onboarding paperwork." *See id*. at 18, ¶ 73-74. Weighing the three *Jet Courier* factors, the Court finds that the complaint fails to state a claim against Stromstad for breach of the duty of loyalty.

### 2. *Third and Fourth Claims – Misappropriation of Trade Secrets*

DTC brings two separate claims for misappropriation of trade secrets against (a) Stromstad and (b) Hirschfeld, Johnson, and Rhinehart. Docket No. 82 at 43-47, ¶¶ 258-277. Both claims are brought under the federal Defend Trade Secrets Act ("DTSA") and the Colorado Uniform Trade Secrets Act ("CUTSA").[10] A plaintiff asserting a claim for misappropriation of trade secrets under the DTSA must "establish: (1) the existence of a trade secret that relates to a product or service used in, or

---

[10] To the extent that the complaint alleges liability for common-law misappropriation of trade secrets, that claim is preempted by the CUTSA. *See Gognat v. Ellsworth*, 259 P.3d 497, 500 (Colo. 2011).

intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means." *Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018) (citing 18 U.S.C. § 1836(b)(1); 18 U.S.C. § 1839; *Ultradent Prods. Inc. v. Spectrum Solutions LLC*, 2018 WL 324868, at *2 (D. Utah Jan. 8, 2018); *Blue Star Land Servs. LLC v. Coleman*, 2017 WL 6210901, at *4 (W.D. Okla. Dec. 8, 2017)).  Similarly, to prevail on a claim under Colorado's UTSA, a plaintiff must show: "[1] that he or she possessed a valid trade secret, [2] that the trade secret was disclosed or used without consent, and [3] that the defendant knew, or should have known, that the trade secret was acquired by improper means." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993).

### a.  Stromstad

Stromstad argues that the complaint does not establish that she misappropriated trade secrets.  Docket No. 114 at 7-8.  In response, DTC argues that the complaint alleges that Stromstad used "customer lists and contact information, including the reformatted resumes . . . to solicit those customers on behalf of Ally [Consulting]." Docket No. 126 at 7-8.

The complaint alleges, broadly speaking, that DTC had the following sets of trade secrets: (1) "Candidate Folders," in which DTC stores resumes, including resumes which it has "re-formatted" to include the DTC logo and contact information,

Docket No. 82 at 12-13, ¶¶ 42-48; (2) a "Candidate Database" that summarized the contents of "more than 1,000 of DTC's re-formatted resumes," *Id*. at 13, ¶¶ 48-49; and (3) a "Profit Calculator" that DTC uses "to evaluate several financial variables and gain competitive advantages in the industry." *Id*. at 13-14, ¶ 50.[11] The complaint alleges that, in order to poach potential customers from DTC, Adam Hirschfeld would represent to customers that there was an "alliance" between Ally and DTC, leading to those customers signing contracts with Ally. *Id*. at 18, ¶¶ 72-73. Once the contracts were in place, Stromstad (among others) would "coordinate with candidates by emailing them . . . onboarding paperwork on Ally letterhead that they had copied from DTC forms." *Id*. ¶ 74. The complaint alleges that Stromstad mistakenly sent candidates DTC paperwork when she meant to send them Ally paperwork. *Id*. at 19, ¶¶ 82-84. The remainder of the complaint's factual allegations about Stromstad's role are conclusory. *See, e.g.*, *id*. at 36-37, ¶ 217 (alleging that "[d]efendants' conspiracy [] to use . . . trade secrets" has caused DTC damages). From these allegations, there is no reasonable inference that Stromstad acquired, used, or disclosed DTC's alleged trade secrets – the Candidate Folders, the Candidate Database, or the Profit Calculator. The complaint does not allege that Stromstad played any role in "soliciting" new customers; her alleged role was limited to sending unspecified "onboarding paperwork" to the new customers. This role did not require any use of trade secrets. Thus, DTC fails to state a claim against Stromstad for misappropriation of trade secrets.

---

[11] The Court makes no ruling as to whether the Candidate Folders, Candidate Database, or Profit Calculator are "trade secrets" within the meaning of the DTSA and CUTSA.

### b. Hirschfeld and Johnson

Hirschfeld and Johnson argue that DTC fails to allege that they acquired, disclosed, or used DTC's trade secrets without consent. Docket No. 113 at 3-6. In response, DTC argues that Hirschfeld and Johnson are liable because they were (1) "principals of Ally [Consulting]" and/or (2) "participat[ed] in sanctioning or authorizing [Ally Consulting]'s agent . . . to steal DTC's trade secrets." Docket No. 125 at 5-6.

Neither argument is persuasive. Under the responsible corporate officer doctrine, a plaintiff "must show some form of participation by the officer in the tort, or at least show that the officer directed, controlled, approved, or ratified the decision that led to the plaintiff's injury." 3A Fletcher Cyclopedia of the Law of Corporations § 1135 (Sept. 2019 update); *see also Hoang v. Arbess*, 80 P.3d 863, 868 (Colo. App. 2003) ("To be found personally liable to third persons for a tort, the officer of a corporation must have participated in the tort."). The well-pleaded allegations in the complaint indicate that: (1) Hirschfeld and Johnson were physically present at "Ally [Consulting] member meetings . . . when the conspiracy to sabotage DTC was discussed and furthered," Docket No. 82 at 4-5, ¶¶ 11-12; (2) Hirschfeld, Johnson, and Adam Hirschfeld "plott[ed]" to "steal[] DTC's business for Ally [Consulting]," *id*. at 16-17, ¶¶ 64-65; (3) Johnson emailed Adam Hirschfeld and stated that he wanted "to pull away from DTC every chance we get as you do as well," *id*. at 17, ¶ 68; and (4) "[o]n information and belief," Hirschfeld and Johnson agreed that Hirschfeld's capital contribution to Ally "was the sweat equity [Adam Hirschfeld] provided in transforming Ally [Consulting] into a DTC competitor by absconding with DTC's business." *Id*. at 24, ¶ 122. None of these

allegations show that Hirschfeld or Johnson directed, controlled, approved, or ratified a decision to acquire, disclose, or use DTC's trade secrets without consent. Rather, the most the allegations show is that Hirschfeld and Johnson knew that Ally would attempt to compete for DTC's business – not steal its trade secrets. *See* Docket No. 125 at 5-6 (arguing that DTC's trade secrets were "profit calculators, customer information, onboarding procedures and protocol, and . . . financial information"). More is required to show Hirschfeld and Johnson's involvement in the alleged theft of trade secrets. *See Hoang*, 80 P.3d at 868-69 (personal liability for negligence attached where defendant was "personally involved in each step of the construction" and "knew or should have known" that construction techniques did not meet recommendations).[12] Thus, DTC cannot sustain its claim for misappropriation of trade secrets against Hirschfeld and Johnson.

### c. Rhinehart

Rhinehart similarly argues that DTC fails to allege that he acquired, used, or disclosed trade secrets. Docket No. 115 at 4-6. DTC again attempts to invoke the responsible corporate officer doctrine, arguing that Rhinehart directly participated in the misappropriation of trade secrets. Docket No. 127 at 3-4.

The complaint alleges that, in May 2017, Adam Hirschfeld "asked" Rhinehart "to

_____

[12] Paragraph 271 of the complaint alleges that "[a]t the time [Hirschfeld and Johnson] acquired DTC's trade secrets, [Hirschfeld and Johnson] knew or had a reason to know" that the disclosure of DTC's trade secrets "constituted a breach of [Adam Hirschfeld, Galban, and Stromstad's] duty to maintain the secrecy of DTC's trade secrets." Docket No. 82 at 45, ¶ 271. The complaint does not identify any instance where Hirschfeld or Johnson acquired trade secrets. This otherwise-conclusory allegation is therefore insufficient to support a misappropriation of trade secrets claim against Hirschfeld or Johnson.

obtain confidential DTC financial information" from Galban, and that Rhinehart obtained

"DTC confidential documents and trade secrets" from Galban.  Docket No. 82 at 34,

¶¶ 195, 198.  The complaint further alleges that, on November 8, 2016, Adam

Hirschfeld emailed the Profit Calculator to Rhinehart.  *Id*. ¶ 197.[13]  Finally, the complaint

alleges that, at the time Rhinehart acquired trade secrets, he "knew or had a reason to

know" that the disclosure of trade secrets violated Adam Hirschfeld and Galban's duty

of loyalty to DTC.  *Id*. at 45, ¶ 271.  The complaint therefore adequately alleges that

Rhinehart acquired a trade secret that was disclosed without consent and had reason to

know it was acquired by improper means, which is sufficient to state a claim under the

DTSA and CUTSA.

### 3.   Fifth Claim – Unjust Enrichment

DTC brings a claim against Hirschfeld, Johnson, and Rhinehart for unjust

enrichment.  Under Colorado law, "[a] party claiming unjust enrichment must prove that

(1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under

circumstances that would make it unjust for the defendant to retain the benefit without

commensurate compensation."  *Sternbuch v. Goss*, 266 P.3d 428, 437 (Colo. App.

2011).  DTC claims that Hirschfeld, Johnson, and Rhinehart "received the benefits of

payments, bonuses, and commissions from third-party oil and gas companies and from

consultants . . . that rightfully belong to DTC."  Docket No. 82 at 46, ¶ 279.

---

[13] The complaint alleges that the Profit Calculator is a "proprietary, complex, and
valuable excel spreadsheet" that DTC uses to present "competitive bids," and that DTC
has "never disclosed [the Profit Calculator] externally."  Docket No. 82 at 13-14, ¶¶ 50-
51.  Rhinehart does not appear to argue that the Profit Calculator is not a trade secret,
and the Court assumes that it is for the purposes of the motion to dismiss.

Hirschfeld, Johnson, and Rhinehart argue that (1) the CUTSA preempts DTC's unjust enrichment claim and (2) DTC fails to allege that Hirschfeld and Johnson received a benefit at DTC's expense. Docket No. 113 at 6-8; Docket No. 115 at 7-8. The Court agrees that DTC fails to allege that these individuals received a benefit at DTC's expense. At most, the complaint alleges that Ally Consulting received a benefit at DTC's expense, not Hirschfeld, Johnson, and Rhinehart personally. *See Brumbelow v. Law Offices of Bennett and Deloney, P.C.*, 372 F. Supp. 2d 615, 622-23 (D. Utah 2005) (applying substantially similar Utah law and holding that an unjust enrichment claim fails where "the benefit, if any, was conferred on the corporation, and not the individual defendants"). There are no non-conclusory allegations in the complaint regarding what benefits Hirschfeld, Johnson, and Rhinehart received, and the complaint does not explain how Ally Consulting distributed revenues from the consultants it allegedly poached from DTC.[14] Thus, this claim fails against Hirschfeld, Johnson, and Rhinehart.

### 4. Seventh Claim – Tortious Interference with Contract

DTC claims that Hirschfeld and Johnson are liable for tortious interference with contract. "To sustain a claim of intentional interference with contract, the plaintiff must prove that the defendant (1) was aware of the existence of the contract; (2) intended that one of the parties breach the contract; (3) induced the party to breach the contract

---

[14] Although DTC suggests that its unjust enrichment claim includes Hirschfeld's participation in an "illegal housing scheme" with Adam Hirschfeld, *see* Docket No. 125 at 8, this is not pled in the complaint. *See* Docket No. 82 at 46, ¶ 279 (alleging that Hirschfeld received the benefit of "payments, bonuses, and commissions from third-party oil and gas companies and from consultants"). Moreover, as discussed later in the order, DTC fails to plead the allegedly fraudulent housing scheme with particularity.

or make it impossible for him or her to perform; and (4) acted 'improperly' in causing the breach." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009) (citing *Krystkowiak v. W.O. Brisben Cos.*, 90 P.3d 859, 871 (Colo. 2004)). DTC claims that Hirschfeld and Johnson induced Adam Hirschfeld to breach his employment agreement with DTC. Docket No. 82 at 48-49, ¶ 297.

Hirschfeld and Johnson argue that the complaint does not include any "factual content" explaining how they "induced" Adam Hirschfeld to breach the employment agreement. Docket No. 113 at 9. The Court agrees. The complaint alleges that, in November 2015, Adam Hirschfeld "began plotting" with Hirschfeld and Johnson to "steal" DTC's business. *See* Docket No. 82 at 16, ¶ 64. According to this allegation, Adam Hirschfeld either initiated the "plot" with Hirschfeld and Johnson or, at least, was in on it from the beginning. Thus, the complaint does not contain a plausible inference that Hirschfeld and Johnson "induced" Adam Hirschfeld to breach his employment agreement. *Cf.* Black's Law Dictionary 790 (8th ed. 2004) (defining "inducement" in the context of contract law as "[t]he benefit or advantage that causes a promisor to enter into a contract"). DTC does not point to any specific allegation to rebut this argument, arguing that "allegations that set forth [Hirschfeld and Johnson's] participation in hatching the entire conspiracy" are sufficient to show inducement. Docket No. 125 at 9. However, this argument fails to explain how Hirschfeld and Johnson induced Adam Hirschfeld to breach his employment agreement. DTC also argues that Hirschfeld and Johnson's scheme "made it impossible for [Adam] Hirschfeld to perform under his contract by not stealing trade secrets." *Id*. This curious argument also fails; the complaint is devoid of any explanation as to how Hirschfeld and Johnson "made it

21

impossible" for Adam Hirschfeld to not steal any trade secrets.  Thus, the complaint

fails to state a claim for tortious interference with contractual relations against

Hirschfeld and Johnson.

### 5. Ninth Claim – Civil Theft

DTC brings a claim for civil theft against Stromstad, Hirschfeld, and Rhinehart.

Under Colorado law, a person commits civil theft when he or she "'knowingly obtains,

retains, or exercises control over anything of value of another without authorization or

by threat or deception,' and acts intentionally or knowingly in ways that deprive the

other person of the property permanently."  *Van Rees v. Unleaded Software, Inc.*, 373

P.3d 603, 608 (Colo. 2016) (quoting Colo. Rev. Stat. § 18-4-401(1)).  A person must

have "the specific intent to permanently deprive the owner of the benefit of property."

*Id*.  In an action for civil theft, a person may maintain an action to recover "property

obtained by theft, robbery, or burglary."  Colo. Rev. Stat. § 18-4-405; *see Itin v. Ungar*,

17 P.3d 129, 134 (Colo. 2000) (holding that the statute provides an owner of property

with a private remedy that "requires proof of a specified criminal act").  The statute

allows for the recovery of only the stolen property itself, not "property or proceeds for

which the stolen property may have been exchanged."  *In re Marriage of Allen*, 724

P.2d 651, 657 (Colo. 1986).

### a. Stromstad

DTC's civil theft claim against Stromstad alleges that Stromstad "obtain[ed] and

use[d] DTC's confidential and proprietary information and trade secrets by theft."

Docket No. 82 at 51, ¶ 311.  As discussed above, the only allegation in the complaint

related to Stromstad is that she would "coordinate with candidates by emailing them . . . onboarding paperwork on Ally [Consulting] letterhead that [she] had copied from DTC forms." *Id*. at 18, ¶ 74. The complaint is otherwise entirely conclusory as to what "confidential and proprietary information and trade secrets" Stromstad acquired from DTC. Although the response suggests that DTC's "onboarding procedures" are proprietary information, *see* Docket No. 126 at 9, the complaint (and the response) fail to explain how Stromstad's use of the onboarding procedures "permanently deprived [DTC] of the benefit of" the onboarding procedures. *See Van Rees*, 373 P.3d at 608. Finally, DTC fails to explain how it could "recover" any property through a civil theft claim against Stromstad. *See Allen*, 724 P.2d at 657 (noting that the civil theft statute allows only for the recovery of stolen property itself). Thus, the civil theft claim against Stromstad fails.

### b. Hirschfeld

DTC's civil claim against Hirschfeld rests on a "scheme to wrongfully obtain by theft rents belonging to DTC." Docket No. 82 at 50, ¶ 308.[15] The complaint alleges that DTC provided a "housing allowance" for consultants and employees that it placed on projects in Ohio and West Virginia. *Id*. at 30, ¶ 168. The complaint further alleges that Hirschfeld used CS Property Holdings, a third-party LLC, to bill DTC consultants directly

---

[15] Although DTC's response brief alleges that Hirschfeld is liable based on "planning to have [Adam] Hirschfeld take" material belonging to DTC, *see* Docket No. 125 at 9, this theory is not pled in the complaint. *See* Docket No. 82 at 50-51, ¶¶ 305-12. The complaint further alleges that Hirschfeld "used [his] title[] and position of trust with DTC to obtain . . . trade secrets by theft." *See id*. at 51, ¶ 311. There are no other allegations in the complaint that Hirschfeld had any title or position of trust in DTC, and DTC does not defend this theory of liability in its response brief.

for provided housing "under the ruse that the arrangement was a part of a DTC 'company housing' program." *Id*. ¶ 170.  The complaint alleges that the amount billed to DTC consultants "far exceeded the actual rent charged to CS Property Holdings and/or [Adam] Hirschfeld." *Id*. at 31, ¶ 176.  After paying CS Property Holdings, the DTC employees and consultants would "seek reimbursement from DTC." *Id*. at 30, ¶ 172.

These allegations fail to state a claim for civil theft against Hirschfeld.  First, there is no basis to conclude that Hirschfeld ever obtained DTC's property.  Under the alleged scheme, CS Property Holdings (presumably controlled by Hirschfeld, although the complaint is not clear) would bill DTC consultants and employees directly for housing. The central transaction is CS Property Holdings obtaining property (cash) from DTC consultants and employees, not from DTC.  DTC fails to explain how its later reimbursement to the consultants and employees is in any way material to the analysis. *See Montoya v. Grease Monkey Holding Corp.*, 883 P.2d 486, 490 (Colo. App. 1994) (holding that a civil theft claim fails against a party that never possessed fraudulently obtained funds).   Second, although the complaint offers repeated conclusory allegations that the amount charged by the third-party LLC was "fraudulent," *see* Docket No. 82 at 31, ¶¶ 173-76, the complaint fails to "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b).  DTC's complaint does not "set forth the time, place, and contents of the false representation, the identity of the party making the false statement, and the consequences thereof." *Id*.; *see L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1076 (D. Colo. 2012).  The complaint

does not explain why CS Property Holdings had any obligation to charge the DTC consultants and employees the amount of rent equivalent to what CS Property Holdings (presumably) paid to the landlords. Thus, DTC's claim against Hirschfeld for civil theft will be dismissed for failure to state a claim.

### c. Rhinehart

DTC's civil theft claim against Rhinehart alleges that Adam Hirschfeld "coordinated and ensured that [Rhinehart] . . . obtained DTC's confidential financial documents and the Profit Calculator." Docket No. 82 at 51, ¶ 309.[16] The complaint further alleges that Rhinehart "knew or had a reason to know" that it breached Adam Hirschfeld and Galban's duty to DTC to send those documents to Rhinehart. *Id*. at 45, ¶ 271. The complaint also alleges that Rhinehart used this information "for competitive purposes to benefit Ally [Consulting]," *id*. at 34, ¶ 198, which the Court infers could "permanently deprive[] [DTC] of the benefit of" the confidential documents and the Profit Calculator. *See Van Rees*, 373 P.3d at 608. Although the Court is unclear whether DTC could "recover" the confidential documents and Profit Calculator through its civil theft claim against Rhinehart, the Court is satisfied that the complaint states a claim for civil theft against Rhinehart.

### 6. Tenth Claim – Conversion

DTC brings a claim for conversion against Rhinehart for "knowingly exercis[ing]

---

[16] Although DTC's response brief alleges that Rhinehart is liable based on exercising control over an allegedly stolen computer, the complaint pleads only that "Ally" obtained the computer by theft. *See* Docket No. 82 at 51, ¶¶ 310. As discussed above, Rhinehart can only be liable for acts of Ally Consulting if he personally participated in the tort. There are no allegations in the complaint that Rhinehart stole the computer.

dominion or control over" DTC's property, specifically, "files containing confidential information" on a laptop and flash drives. Docket No. 82 at 51-52, ¶ 314. Under Colorado law, to state a claim for conversion DTC must allege that: "(i) a defendant exercised dominion or control over property; (ii) that property belonged to [DTC]; (iii) the defendant's exercise of control was unauthorized; (iv) [DTC] demanded return of the property; and (v) the defendant refused to return it." *L-3 Commc'ns*, 863 F. Supp. 2d at 1081.

DTC alleges that Adam Hirschfeld stole his DTC laptop when he resigned. Docket No. 82 at 37, ¶ 220. DTC further alleges that Rhinehart became aware that Adam Hirschfeld was using the laptop and "requested" that he stop all use of the computer. *Id.* ¶ 223. Finally, DTC alleges that Adam Hirschfeld continued to use the stolen laptop. *Id.* at 37-38, ¶¶ 224-25.[17] These allegations fail to state a claim against Rhinehart because there is no plausible inference that he had "dominion or control" over the laptop. Indeed, the allegations indicate that Rhinehart lacked any dominion or control over the laptop, as his request (not directive) that Adam Hirschfeld stop using the laptop had no effect on Adam Hirschfeld's behavior. There are no allegations that Rhinehart personally participated in the theft of the laptop. *See Hoang*, 80 P.3d at 868 ("To be found personally liable to third persons for a tort, the officer of a corporation

---

[17] Although the complaint, filed after more than a year of litigation, alleges that "DTC has demanded, to no avail, that the [d]efendants return [the laptop]," Rhinehart represents that the laptop "was delivered to a forensic firm in accordance with evidence preservation requirements." *Compare* Docket No. 82 at 38, ¶ 226 *with* Docket No. 115 at 9-10. The Court found at the preliminary injunction hearing that Rhinehart gave the laptop to a third-party forensics company for safekeeping after Hirschfeld turned over the laptop in July or August of 2017. *See* Docket No. 57 at 9, ¶ 18.

must have participated in the tort.").  To the extent that the conversion claim against Rhinehart relies on the previously discussed allegations that he received confidential information and the Profit Calculator, the complaint fails to make non-conclusory allegations that Rhinehart refused to return (or delete) the confidential information or the Profit Calculator, as is required for a conversion claim.  *See L-3 Commc'ns.*, 863 F. Supp. 2d at 1081; *see also Scott v. Scott*, 428 P.3d 626, 635 (Colo. App. 2018) (noting that "a lawful possessor of property may become a converter once he or she refuses a demand for return of the property from the lawful owner").  Thus, DTC's claim against Rhinehart for conversion fails.

### 7.   Eleventh Claim – Civil Conspiracy

DTC brings a claim for civil conspiracy against the individual defendants.  To state a claim for civil conspiracy under Colorado law, a plaintiff must allege: "(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."  *In re Qwest Commc'ns Int'l, Inc. Sec. Litigation*, 387 F. Supp. 2d 1130, 1153 (D. Colo. 2005) (citing *Jet Courier*, 771 P.2d at 502).  To state a claim for civil conspiracy, a plaintiff must "allege specific facts showing agreement and concerted action among defendants."  *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1988); *see also Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995) (noting that "evidence of . . . an agreement [to form a conspiracy] must be presented by the plaintiff").  "[P]laintiff cannot succeed on its claims for civil conspiracy without showing that each defendant agreed to do something

in furtherance of the conspiracy, knowing of its improper purpose." *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1480 (D. Colo. 1996).

DTC alleges that the defendants "conspired together for the objective of creating an unlawful and illegitimate clone company to misappropriate DTC's name and reputation." Docket No. 82 at 52, ¶ 322.[18] The complaint further alleges that the "course of action" was "for [Adam] Hirschfeld, [Galban], and [Stromstad] to breach their duties of loyalty" to DTC. *Id*. at 53, ¶ 324. The individual defendants argue that the complaint fails to provide more than conclusory allegations that they came to "a meeting of the minds on the object or course of action." The Court disagrees. Although the allegations that the individual defendants came to a meeting of the minds regarding the conspiracy are conclusory, the complaint includes specific allegations of concerted action. For example, the complaint alleges that Hirschfeld and Johnson "exchanged ideas about [Ally Consulting's] logo" and agreed with Adam Hirschfeld that he would continue to work for DTC while siphoning business to Ally Consulting. *See* Docket No. 82 at 16-17, ¶ 65. The complaint alleges that Stromstad and Rhinehart had "secret Ally [Consulting] email accounts" that they would use to onboard customers for Ally Consulting rather than DTC. *See id*. at 18, ¶ 74. The complaint also alleges that Stromstad and Rhinehart worked to conceal their work for Ally Consulting from DTC's owners by tracking the whereabouts of DTC's owners and communicating to make sure that Ally Consulting information was hidden before the DTC principals arrived. *See id*.

---

[18] DTC suggests that its conspiracy claim includes Hirschfeld's participation in the above-referenced "illegal housing scheme" with Adam Hirschfeld. Docket No. 125 at 11-12. For the reasons discussed above, the complaint fails to allege the allegedly "fraudulent" housing scheme with particularity. *See* Fed. R. Civ. P. 9(b).

at 20-21, ¶¶ 90-97.  Taken together, these allegations provide sufficient factual support to state a claim for civil conspiracy against the individual defendants.

The individual defendants argue that the civil conspiracy claim against them is preempted by the CUTSA.  The statute states that the CUTSA "displaces conflicting tort, restitutionary, and other law of [Colorado] providing civil remedies for misappropriation of a trade secret," but does not affect "[o]ther civil remedies that are not based upon misappropriation of a trade secret."  Colo. Rev. Stat. § 7-74-108.  The Court agrees with *Powell Prods.*, which held that, under the CUTSA, "[p]reemption is only appropriate where other claims are no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation." 948 F. Supp. at 1474.  Thus, DTC's civil conspiracy claim is preempted only to the extent that the claim "do[es] not depend upon the information in question qualifying as trade secrets" or "include[]s additional elements not necessary for a misappropriation claim."  *Id.*; *see also Gates Corp. v. CRP Indus., Inc.*, No. 16-cv-01145-KLM, 2017 WL 5714342, at *5 (D. Colo. Nov. 28, 2017).  The Court is satisfied that, at the motion to dismiss stage, at least some of DTC's civil conspiracy claim is not based upon misappropriation of trade secrets and is not preempted.

### 8.  Twelfth Claim – RICO

DTC brings a RICO claim against the individual defendants.  In order to state a claim under RICO, DTC must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *See Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010).  "A pattern of racketeering activity must include at least two predicate acts."

*Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007) (quotation omitted).  The Court

finds that DTC has failed to adequately allege a pattern of racketeering because (1) the

complaint "fails to allege sufficient continuity to sustain a RICO claim," *Hall v. Witteman*,

584 F.3d 859, 867 (10th Cir. 2009), and (2) the complaint fails to adequately allege two

predicate acts.

       To establish a pattern of racketeering activity, a plaintiff must show that (1) the

racketeering predicates are "related" and (2) they "amount to or pose a threat of

continued criminal activity."  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239

(1989).  This second "continuity" requirement refers "either to a closed period of

repeated conduct, or to past conduct that by its nature projects into the future with a

threat of repetition."  *Id*. at 241.  In evaluating continuity, courts consider (1) the duration

of the related predicate acts, and (2) the "extensiveness" of the RICO enterprise's

scheme, with the goal of "achieving a natural and commonsense result."  *Resolution*

*Trust Corp. v. Stone*, 998 F.2d 1534, 1543-44 (10th Cir. 1993).  An alleged racketeering

scheme "directed at one individual with no potential to extend to other persons or

entities" does not satisfy the continuity requirement.  *SIL-FLO, Inc. v. SFHC, Inc.*, 917

F.2d 1507, 1516 (10th Cir. 1990) (recognizing that, "[i]n enacting the RICO statute,

'Congress was concerned . . . with long-term criminal conduct'" (quoting *Northwestern*

*Bell*, 492 U.S. at 242)); *see also Pagel v. Wash. Mut. Bank, Inc.*, 153 F. App'x 498, 502

(10th Cir. 2005) (unpublished) ("In this circuit, it is well established that a single scheme

to accomplish one discrete goal, directed at a finite group of individuals, with no

potential to extend to other persons or entities, rarely will suffice to establish a threat of

continuing racketeering activity.").

The Court finds DTC's complaint fails to establish continuity.  DTC alleges that it is the sole target of the racketeering scheme.  *See* Docket No. 82 at 54, ¶ 331 (alleging that the "unlawful purposes" of the scheme included "stealing DTC's business" and "misappropriating DTC's confidential and proprietary information").  Other than a conclusory suggestion that the purpose of the racketeering scheme was to "intentionally defraud . . . DTC's actual and prospective customers," *see id*., the complaint alleges no other "persons or entities" targeted by the enterprise.  *See SIL-FLO*, 917 F.2d at 1516. The complaint also lacks any indication that the alleged enterprise has any "potential" to extend to other persons or entities.  *See Pagel*, 153 F. App'x at 502.  As in *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545 (10th Cir. 1992), "[p]laintiff[] allege[s] what is actually a closed-ended series of predicate acts constituting a single scheme . . . to establish a discrete goal directed at a finite group of individuals 'with no potential to extend to other persons or entities,'" which is insufficient to establish continuity.  972 F.2d at 1556 (quoting *SIL-FLO*, 917 F.2d at 1516).  As DTC fails to satisfy the continuity requirement, it fails to allege that defendants are engaged in "the type of activity that RICO was enacted to address."  *Id*.

Even assuming that the complaint establishes continuity, DTC has failed to sufficiently allege two or more predicate acts of racketeering activity.  The complaint alleges that defendants "committed multiple predicate acts of mail and wire fraud and theft/misappropriation of DTC's trade secrets."   Docket No. 82 at 54, ¶ 332.  However, this allegation does not specifically identify which acts in the hundreds of paragraphs of

factual allegations establish violations of 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), or § 1832 (theft of trade secrets). DTC's response briefs do not identify which acts it alleges are predicate acts, which statute they violate, and how each element of the statute is met. Moreover, to the extent that the RICO claim is based on predicate acts of mail and wire fraud, DTC has failed to plead any fraud with particularity. *See* Fed. R. Civ. P. 9(b). DTC's complaint does not "set forth the time, place, and contents of the false representation, the identity of the party making the false statement, and the consequences thereof." *See L-3 Commc'ns*, 863 F. Supp. 2d at 1076 (citing *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006)).

Because the complaint fails to establish that the individual defendants engaged in a "pattern" of racketeering activity, DTC's RICO claim against them fails.

### 9. Fourteenth Claim – Conspiracy to Violate the CFAA

DTC brings a claim against the individual defendants for conspiring to violate the CFAA. DTC contends that defendants "knew of and/or encouraged [Adam] Hirschfeld's post-resignation, unauthorized access" of the DTC laptop. Docket No. 82 at 57, ¶ 347. DTC claims that, as a result of this conspiracy, "the integrity and/or the availability of DTC's data and systems have been impaired." *Id*. ¶ 348.

As relevant here, the CFAA provides that a person who suffers "loss to [one] or more persons . . . aggregating at least $5,000 in value," 18 U.S.C. § 1030(c)(4)(A)(i)(I), as a result of a violation of the CFAA may bring a civil action against that person. *Id*. § 1030(g). The CFAA also provides for conspiracy liability. *Id*. § 1030(b). The complaint does not specify which portion of the CFAA the conspiracy intended to

violate.  However, the response briefs variously allege that the conduct violated

§ 1030(a)(4) – that the conspiracy was to "knowingly and with intent to defraud,

access[] a protected computer without authorization, or exceed[] authorized access,

and by means of such conduct further[] the intended fraud and obtain[] anything of

value" – or § 1030(a)(5)(B) – that the conspiracy was to "intentionally access[] a

protected computer without authorization, and as a result of such conduct, recklessly

cause[] damage."[19]  Because the CFAA is a federal criminal statute, to establish a

conspiracy to violate the CFAA, a plaintiff must allege that (1) the defendant agreed

with at least one other person to violate the law, (2) one of the conspirators engaged in

at least one overt act furthering the conspiracy's objective, (3) the defendant knew the

essential objective of the conspiracy, (4) the defendant knowingly and voluntarily

participated, and (5) there was interdependence among the members of the conspiracy.

Tenth Circuit Criminal Pattern Jury Instructions § 2.19 (updated 2018) (general

conspiracy instruction); *see also United States v. Schaffer*, 586 F.3d 414, 422 (6th Cir.

2009) (in a criminal case, finding that an indictment charging defendant with conspiracy

to violate the CFAA was sufficient where indictment set forth the objective of the

conspiracy, the role played by each defendant, the overt actions taken in furtherance of

---

[19] Some courts have read § 1030(g) to support only a civil action for violations of
§ 1030(a)(5).  *See Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1054 (D.
Minn. 2010).  *But see Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2003)
(holding that § 1030(g) provides a civil remedy for any person who suffers damage or
loss due to a violation of the CFAA); *US Bioservices Corp. v. Lugo*, 595 F. Supp. 2d
1189, 1191 (D. Kan. 2009) (assuming without analysis that § 1030(g) provides for civil
liability for a violation of § 1030(a)(4)).  Because DTC fails to plausibly establish the
individual defendants' conspiracy liability, the Court need not decide whether a violation
of § 1030(a)(4) can support a civil action.

the conspiracy, and the means used to accomplish it).

The complaint fails to state a claim for conspiracy liability against the individual defendants.  There are no specific factual allegations supporting the claim that the individual defendants "knew of and/or encouraged" Adam Hirschfeld's access of the laptop; thus, it is conclusory.  Moreover, DTC fails to explain how a showing that the individual defendants "knew of and/or encouraged" access to the laptop is sufficient to establish an agreement to violate the law or that there was "interdependence" among the individual defendants regarding the alleged theft of the laptop.

DTC's arguments in response are unavailing.  First, DTC suggests that it is sufficient to allege that defendants "conspired" to violate the CFAA.  *See, e.g.*, Docket No. 126 at 13.  DTC offers no authority for the proposition that a bare allegation that defendants "conspired" is sufficient to state a claim for which relief can be granted.  This is an example of a legal conclusion couched as a factual allegation that the Court need not accept.  *See, e.g.*, *Johnson v. Liberty Mut. Fire Ins. Co.*, 648 F.3d 1162, 1165 (10th Cir. 2011) ("[A] naked legal conclusion, backed by no well-pleaded facts . . . [is] hardly enough to state a claim for relief.").  Second, DTC suggests that it may sustain its claim based on (1) Stromstad's use of DTC computers to "steal reformatted resumes and onboarding paperwork," Docket No. 126 at 13-14, and (2) Adam Hirschfeld's access of DTC computers to send "[Rhinehart] trade secrets."  Docket No. 127 at 14.  However, the conspiracy pled in the complaint is specifically limited to defendants' "knowledge and/or encouragement of [Adam] Hirschfeld's unauthorized, post-resignation accessing" of the laptop.  *See* Docket No. 82 at 57, ¶ 348.  Thus, DTC's claim fails.

34

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Ally Energy Services, Inc. Motion to Dismiss and Opening Brief [Docket No. 103] is **GRANTED**.  It is further

**ORDERED** that defendants Craig Hirschfeld and Joseph Johnson's Motion to Dismiss Second Amended Complaint [Docket No. 113] is **GRANTED IN PART AND DENIED IN PART**.  It is further

**ORDERED** that defendant Katie Stromstad's Motion to Dismiss Second Amended Complaint [Docket No. 114] is **GRANTED IN PART AND DENIED IN PART**. It is further

**ORDERED** that defendant Ross Rhinehart's Motion to Dismiss Second Amended Complaint [Docket No. 115] is **GRANTED IN PART AND DENIED IN PART**. It is further

**ORDERED** that all claims against defendant Ally Energy Services, Inc. are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED** that plaintiff's Fourth, Fifth, Seventh, Ninth, Twelfth, and Fourteenth Claims against defendant Craig Hirschfeld are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED** that plaintiff's Fourth, Fifth, Seventh, Twelfth, and Fourteenth Claims against defendant Joseph Johnson are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED** that plaintiff's Second, Third, Ninth, Twelfth, and Fourteenth Claims against defendant Katie Stromstad are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED** that plaintiff's Fifth, Tenth, Twelfth, and Fourteenth Claims against defendant Ross Rhinehart are **DISMISSED WITH PREJUDICE**.

DATED September 25, 2019.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge